UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN LINCOLN III, individually and on behalf of all others similarly situated, | No.  2:23-cv-00806-MCE-CSK |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| MX TECHNOLOGIES, INC., | |
| Defendant. | |

Through the present action, Plaintiff Calvin Lincoln III ("Plaintiff"), on behalf of himself and all others similarly situated, seeks both an injunction and damages against Defendant MX Technologies ("Defendant" or "MX") for Defendant's alleged violations of federal, California, and Utah law.  Presently before the Court are Defendant's Motion to Dismiss (ECF No. 25) and Motion to Change Venue (ECF No. 26).  For the following reasons, the Motion to Change Venue is GRANTED, and the Motion to Dismiss is DENIED as moot.[1]

///

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Local Rule 230(g).

1

1

## BACKGROUND

2

3      Plaintiff's claims arise out of his usage of Defendant's MoneyManager banking

4   tool embedded within the "Lexington Law" app.  Lexington Law is a credit-repair app

5   owned and operated by Progrexion ASG.  Decl. of Andrew Warren ("Warren Decl."),

6   ECF No. 26-1, ¶ 3.  The app includes the MoneyManager feature, which is licensed by

7   the Defendant, id. ¶ 4, a Utah company, id. ¶ 2.  After the user connects MoneyManager

8   to their bank account by entering their information, MoneyManager consolidates data

9   from a user's various bank accounts and presents it within the app for ease of review.

10  Id. ¶ 4.

11      Before being able to use the MoneyManager feature, the user is prompted to

12  enter their financial information by clicking on a large blue button labeled "Get Started."

13  Id. ¶ 5.  Immediately beneath that button, clearly displayed in italicized black text of the

14  same size as most other text on the page, MX declares: "*By clicking 'Get Started', you*

15  *agree to our Terms and Conditions.*"  Id. ¶ 5.  The underlined portion of this statement

16  hyperlinks to MX's terms and conditions.  Id.  Those terms and conditions in turn contain

17  a forum selection clause stating the following:

18
19      You agree that any claim or dispute of any sort that might arise between you and
       MX, its officers, directors, employees, agents or affiliates must be brought in Salt
       Lake County or Utah County, Utah, subject to applicable jurisdictional
20      requirements in any such action or proceeding. You irrevocably waive any
       objection to such venue.
21

22  Id., Ex. B, ECF No. 27.  Given the exclusive language of this section, Defendant

23  contends this action must be transferred to the federal court located in either of the

24  designated counties in Utah.  The Court agrees that venue is lacking here but does not

25  agree that the case should be transferred.

26  ///

27  ///

28  ///

1

**ANALYSIS**

2

3      Forum selection clauses are presumptively valid under federal law and should not

4   be set aside unless they are "unreasonable" under the circumstances. M/S Bremen v.

5   Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  The party seeking to avoid a forum

6   selection clause bears a "heavy burden" to establish the clause as unreasonable.  Id. at

7   17.  In the Ninth Circuit, forum selection clauses are only unreasonable if:  (1) the clause

8   was the result of fraud, undue influence, or overweening bargaining power; (2) the

9   selected forum is so gravely difficult and inconvenient that Plaintiffs would essentially be

10  denied their day in court; or (3) enforcement of the clause would contravene a strong

11  public policy of the forum in which the suit was brought.  Argueta v. Banco Mexicano,

12  S.A., 87 F.3d 320, 325 (9th Cir. 1996) (citations and quotation marks omitted).

13      In Nguyen v. Barnes & Noble Inc., the Ninth Circuit determined that the validity of

14  a browsewrap contract "depends on whether the user has actual or constructive

15  knowledge of a website's terms and conditions."  763 F.3d 1171, 1176 (9th Cir. 2014).

16  Courts have been willing to find the requisite notice for constructive knowledge "where a

17  browsewrap agreement resembles a clickwrap agreement—that is, where the user is

18  required to affirmatively acknowledge the agreement before proceeding with use of the

19  website."  Id. at 1176—77 (citing, e.g., Zaltz v. JDATE, 952 F.Supp.2d 439, 451—52).

20  As an example of this type of agreement, the Nguyen Court describes a forum selection

21  clause contained within "a notice below the 'Sign Up' button [which] stated, 'By clicking

22  Sign Up, you are indicating that you have read and agree to the Terms of Service,' and

23  user had clicked 'Sign Up.'"  Id. (quoting Fteja v. Facebook, Inc., 841 F.Supp.2d 849,

24  838—40).  This is precisely the scenario that is before the Court here.

25      Here, Plaintiff argues that the forum selection clause, contained within a

26  browsewrap[2] agreement, should not be enforced because the terms are not "reasonably

27      _____

28          [2] The parties here commonly refer to the agreement as "sign-in wrap."  As exemplified above by
    Nguyen (citing Fteja), this "sign-in wrap" is a subset of browsewrap which resembles clickwrap by requiring
    the user to affirmatively acknowledge the agreement before using the MoneyManager feature.

3

1    conspicuous" to put a reasonably prudent user on constructive notice.  Pl.'s Opp., ECF

2    No. 32, at 3.  This argument is unpersuasive.

3         More specifically, Plaintiff argues, relying on Berman v. Freedom Fin. Network,

4    LLC, 30 F.4th 849 (9th Cir. 2022), that, for a variety of reasons, the text and hyperlink

5    themselves are not conspicuous.  He next contends that the screen in question

6    proposes no forward-looking relationship that would naturally be governed by

7    preestablished terms and conditions.  Finally, Plaintiff takes the position that the

8    conditions cannot be reasonably conspicuous because MX is never mentioned by name

9    on the "Get Started" screen.  The Court addresses each argument in turn.

10        First, as indicated, in arguing that the text and hyperlink themselves are not

11   reasonably conspicuous, Plaintiff draws several analogies to Berman.  In Berman,

12   Plaintiffs were prompted to access a website by a large green "Continue" button.  Below

13   that button, in two lines of gray text against a white background, which were

14   considerably smaller than any other text on the page, the page read "I understand and

15   agree to the Terms & Conditions. . ."  30 F.4th at 854.  The text was "sandwiched"

16   between large, attention-grabbing buttons prompting the user to take actions.  Id.  The

17   Court held the agreement unenforceable because the terms themselves were not

18   reasonably conspicuous and the existence of a hyperlink was not readily apparent.  Id.

19   at 856—57.  Thus, the agreement was unenforceable for want of "any action that

20   unambiguously manifested [Plaintiff's] assent to be bound by the terms and conditions.

21   Id.

22        The facts of this case are markedly different from those in Berman.  Unlike

23   Berman, the font size is identical to that of nearly all other text on the page, including the

24   MoneyManager advertisement text above the "Get Started" button.  In addition,

25   Defendant uses black font against white background rather than grey font against white

26   background.  Defendant italicizes the declaration and underlines the hyperlink, making it

27   clear to a reasonably prudent user where the hyperlink exists.[3]  Given the clarity of both

28        [3] Plaintiff's argument that this hyperlink could be made more conspicuous if it were typed in a

1    the text and the hyperlink (that are much clearer here than in Berman), proceeding under

2    these circumstances unambiguously manifested Plaintiff's assent to be bound by

3    Defendant's terms and conditions.

4           Moreover, and unlike Berman, Defendant's notice clearly states what action the

5    user must take to manifest assent to the agreement ("By clicking continue…").  In

6    Berman, the Court was presented with only a "notice in fine print stating, 'I understand

7    and agree to the Terms & Conditions which includes mandatory arbitration.'"  30 F.4th at

8    853.  Indeed, the Berman Court itself noted that the "notice defect could easily have

9    been remedied by including language such as, 'By clicking the Continue>> button, you

10   agree to the Terms & Conditions.'"  Id. at 858 (citing, e.g., Meyer v. Uber Tech., Inc., 868

11   F.3d 66, 78—80 (2nd Cir. 2017)).  The approved-of language in Berman is nearly

12   verbatim the language present here.  Indeed, Defendant's notice is more conspicuous

13   than that in Berman, both on the grounds of the actual size, color, and location of the

14   text, as well as in the content of the notice.  Thus, the analogies to Berman are

15   unconvincing.

16          Second, Plaintiff argues that these terms are not reasonably conspicuous

17   because the user only seeks a one-off transaction rather than a forward-looking

18   relationship which would naturally be expected to be governed by continuing terms and

19   conditions.  However, this Court finds that the relationship established by clicking the

20   "Get Started" button is, in fact, a forward-looking and continuous one.  Once the user

21   clicks "Get Started" and enters their bank information, they set into motion an ongoing

22   relationship in which MoneyManager continuously compiles the user's bank account

23   balances.  This registration process for an ongoing service reflects the user's

24   contemplation of "some sort of continuing relationship."  Oberstein v. Live Nation Ent.,

25

26   color, commonly blue, does not change the Court's analysis.  That fact is outweighed by the host of other
     factors contributing to the conspicuousness of Defendant's terms and conditions.  Nor is the Court
     persuaded by Plaintiff's argument that the location of the terms and conditions below the "Get Started"
27   button as opposed to above it makes the link somehow less noticeable.  See Fteja, 841 F.Supp.2d at
     838—840 (enforcing a similar agreement contained in terms located underneath a large 'Sign Up' button).
     The location of this text would not be made more conspicuous by relocation above the "Get Started"
28   button.

1    Inc., 60 F.4th 505, 517 (9th Cir. 2023) (quoting Sellers v. JustAnswer LLC, 73

2    Cal.Rptr.3rd 1, 29 (2021)).  Such a relationship would naturally be governed by ongoing

3    parameters.

4         Finally, Plaintiff faults the application of the terms and conditions on the ground

5    that MX is never mentioned by name on the screen in question.  Plaintiff does not cite

6    any binding authority for this assertion, nor is this Court aware of any, and Plaintiff's only

7    persuasive authority, Doe v. Massage Envy Franchising, LLC, 303 Cal. Rptr. 3d 269

8    (2022), is inapposite.  In Doe, not only were the terms deemed inconspicuous and the

9    interaction deemed a one-off transaction, but the Plaintiff had previously signed a

10   "General Consent" form that made clear that it was only between the Plaintiff and a party

11   different from the one at hand.  Further, the Doe court made clear that in cases that

12   "'involve a consumer signing up for an *ongoing* account . . . it is reasonable to expect

13   that the typical consumer in that type of transaction contemplates entering into a

14   continuing, forward-looking relationship' governed by terms and conditions."  Id. at 35

15   (quoting B.D. v. Blizzard Entertainment, Inc., 292 Cal.Rptr. 3d 47, 61 (2022)).

16        This transaction between Mr. Lincoln and MX was subject to a valid forum-

17   selection clause.  The clause was embedded in MX's terms and conditions, which were

18   conspicuously displayed below the "Get Started" button.  Under the circumstances of this

19   case, a reasonably prudent user would be aware that clicking the "Get Started" button

20   would manifest assent to the terms and conditions.  Once a user enters their account

21   information into MoneyManager, they initiate an ongoing relationship which is naturally

22   governed by similarly ongoing terms and conditions.  Transfer to the District of Utah thus

23   appears proper.

24        This case is complicated, however, by a circuit split between the Ninth and Tenth

25   circuits regarding how the language of the forum selection clause should be interpreted.

26   On one hand, this Court is bound by the Ninth Circuit decision in Simonoff v. Expedia,

27   Inc., 643 F.3d 1202 (9th Cir. 2011).  The panel in that case concluded that a forum

28   selection clause providing for exclusive jurisdiction "in" a particular county provided for

                                              6

1  jurisdiction in either state or federal venues in that county.  Id. at 1206-07.  Accordingly,

2  under that authority, the forum selection clause in the instant case would permit

3  Plaintiff's action to proceed in either the state or federal courts in the identified counties.

4  But Tenth Circuit authority is to the contrary.  In the Tenth Circuit, language

5  dictating that "venue shall be proper under this agreement in Johnson County, Kansas,"

6  was held to permit the bringing of suit only in the state court of the identified county.  Milk

7  'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992).  Accordingly, were this

8  Court to transfer this action to the Utah District Court pursuant to Ninth Circuit precedent,

9  the Utah court would be required under Tenth Circuit precedent to either transfer the

10  case back here or to dismiss it outright.  Indeed, this Court has previously had a case

11  transferred back from a district court in the Tenth Circuit after that court determined

12  venue was improper before it.  See S&J Rentals v. Hilti, Inc., Case No. 17-CV-0159-

13  CVE-FHM, 2017 WL 2992732 (N.D. Okla. 2017).[4]

14  Theoretically, if this Court were to follow Ninth Circuit precedent in transferring the

15  case to the District of Utah, and the District of Utah were to apply its own binding Tenth

16  Circuit precedent, that court would then be required to transfer the case again, and the

17  matter could hypothetically ping-pong back and forth between the courts given the

18  conflicting appellate holdings.  Such a result would obviously benefit no one.

19  Accordingly, the Court concludes that under the unique circumstances of this case, in

20  which venue here is clearly improper and venue in the District of Utah would be improper

21  under the precedent that binds that court, dismissal is warranted.  See Cycle City, Ltd. v.

22  Harley-Davidson Motor Co., 81 F. Supp. 3d 993, 1000 (D. Haw. 2014) ("Where a party

23  moves to transfer based on a forum selection clause that points to a state court, the

24  court will treat the party's motion to transfer as a motion to dismiss."); Yei A. Sun v.

25  Advanced China Healthcare, Inc., 901 F.3d 1081, 1087 (9th Cir. 2018) (affirming

26  dismissal partly on grounds that "§ 1404(a) merely codified the doctrine of forum non

27  _____

[4] Here, unlike S&J Rentals, the Ninth and Tenth Circuits split on the meaning of the language "any case … must be brought in Salt Lake County or Utah County, Utah." Resolving this conflict appears to be

28  an issue of first impression in this jurisdiction.

conveniens 'for the subset of cases in which the transferee forum is within the federal court system") (citing Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist of Tex., 571 U.S. 49, 60 (2013)).

**CONCLUSION**

For the reasons set forth above, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Transfer, construed as a motion to dismiss, (ECF No. 26) is GRANTED without prejudice to permit Plaintiff to refile this action in Salt Lake County or Utah County, Utah;

2. Defendant's independent Motion to Dismiss (ECF No. 25) is DENIED as moot;

3. This case is hereby DISMISSED;

4. The Clerk of this Court is directed to close the case.

IT IS SO ORDERED.

Dated:  July 1, 2024

_____
MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE